UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 24-CR-00019-TSC |
| : | |
| LEE STUTTS, : | |
| : | |
| Defendant. : | |

**UNITED STATES' MOTION TO REVOKE**

The United States of America, by and through its undersigned attorney, respectfully moves the Court pursuant to 18 U.S.C. § 3148(b) to issue a bench warrant for Defendant Lee Stutts for violations of the terms of his pre-trial release, to revoke his pre-trial release order, and detain him pending the case proceedings in this matter.

According to pretrial services, Stutts has been in violation of his release conditions since on or before December 18, 2023. Specifically, Stutts has tested positive for illicit substances on at least six occasions while on pretrial release and has informed his substance abuse provider that "he has no desire to stop his substance use." ECF No. 26 at 3–4. Stutts argues that he should not be revoked, despite multiple failed drug tests in violation of his conditions of release, because his Adderall prescription is prompting the positive drug tests. According to pretrial services, however, Adderall is not the reason for his positive tests. The lab confirmed use of a methamphetamine, not just amphetamines. Additionally, the Adderall prescription submitted by the defendant was not prescribed until September 2024, long after the positive tests began. The defendant's pre-trial release order should therefore be revoked.

I.   **Stutts's Charges and Release Conditions**

On January 5, 2021, Stutts and a companion traveled from North Carolina to Washington,

1

D.C. On January 6, 2021, Stutts attended the "Stop the Steal" rally on the Ellipse before walking to the United States Capitol. At approximately 1:00 p.m., Stutts arrived on the Capitol's West Plaza. Over the following two hours, Stutts committed multiple assaults against Metropolitan Police Department and U.S. Capitol Police officers, assisted other rioters in using a giant Trump billboard sign as a battering ram against officers, and played a key role in the final breach of the police line on the West Plaza. After Stutts and the other rioters overtook the West Plaza, Stutts climbed the stands erected for the 2021 Presidential Inauguration, where he remained until approximately 5:00 p.m.

On September 26, 2023, a criminal complaint charged Stutts with various misdemeanors and felonies for his actions at the U.S. Capitol on January 6, 2021. He was arrested on November 16, 2023. Following his arrest, Stutts appeared before a U.S. Magistrate in the West District of North Carolina. During his initial appearance, he was informed of the charges against him and his rights, and he agreed to waive both an identity and preliminary hearing. On November 28, 2023, Stutts appeared before U.S. Magistrate Judge Moxila A. Upadhyaya in the District of Columbia. The government did not oppose Stutts's release on conditions, and the Court ordered Stutts released subject to certain conditions set out in the Court's Order Setting Conditions of Release. ECF No. 9. The release conditions included that Stutts "must not violate federal, state, or local law while on release" and "must not use or unlawfully possess a narcotic drug or other controlled substances in 21 U.S.C. § 802, unless prescribed by a medical practitioner." *Id.* at 1–2. The conditions also require Stutts to "submit to testing for a prohibited substance if required by the pretrial services office or supervising officer," and if he tests positive, "he should participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services or supervising officer." *Id*. 2–3.

On May 1, 2024, a Superseding Indictment was returned charging Stutts with fifteen counts, including eight counts for assaulting, resisting, or impeding certain officers. ECF No. 22. Two of the assault counts involve the use of a dangerous weapon. *Id.* (Counts 9 and 10). A Second Superseding Indictment was returned on the date of this filing, November 6, 2024. The Second Superseding Indictment charges Stutts with nine counts of assaulting, resisting, or impeding certain officers, and drops Count One of the Superseding Indictment, which charged Stutts under 18 U.S.C. § 1512(c)(2).

On July 19, 2024, the Court held a status hearing and placed Stutts on home detention, with location monitoring, in light of Stutts's violations of his pretrial release conditions. ECF No. 27 at 2-3. The defendant's new pretrial release conditions again included provisions stating that he must "not use or unlawfully possess a narcotic drug or other controlled substance defined in 21 U.S.C. 802, unless prescribed by a licensed medical practitioner," and requiring him to "submit for testing for a prohibited substance if required by the pretrial services officer or supervising officer" and "participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services office or supervising officer." ECF No. 27 at 2.

The Court held another status hearing on July 29, 2024. During that status hearing, Stutts argued that Adderall, not his use of methamphetamine, was producing positive drug testing results. The Court placed Stutts on home detention. The Court further provided Stutts with an opportunity to file a status report with his drug testing results and suggested modifications to his conditions of release by September 12, 2024, but Stutts failed to do so. The Court then ordered Stutts to show cause as to why his conditions of release should not be modified by October 4, 2024. 9/19/24 Minute Order. In his Response to Show Cause, Stutts argued that he "is not testing positive for

3

illegal substances," but is rather "testing positive for a controlled substance for which he *now* has a prescription – Adderall." ECF No. 37 at 1 (emphasis added). He did not indicate that he had a prescription for Adderall at the time of his numerous other failed drug tests, but rather that he had "obtained" an Adderall prescription since the "last status hearing." *Id*. at 1-2. Trial is set for January 13, 2025.

## II. Evidence of Violation of Stutts's Pre-trial Release Conditions and Material Change in Circumstances

Pretrial services filed its first Violation Report in this matter on January 31, 2024. ECF No. 19. According to the Report, Stutts tested positive for methamphetamine on December 18, 2023. Pretrial services gave Stutts a verbal warning as a sanction and referred him to Integrated Care of Greater Hickory to schedule a substance abuse assessment. This violation was not addressed at the January 29, 2024 arraignment and status conference because the Report was filed after the hearing. *See* Minute Entry 1/29/24; ECF. No 19 (filed 1/31/24).

Pretrial services filed its next Report on April 30, 2024. ECF No. 21. As of the writing of that Report, Stutts had failed to report for additional drug testing or to schedule a substance abuse assessment at the Integrated Care of Greater Hickory, as instructed. *Id*. at 3.

On May 7, 2024, the Court held a status hearing, during which it ordered Stutts to comply with the conditions of his release. Specifically, the Court ordered Stutts to cease using illicit substances, report for drug testing, and schedule his abuse assessment. *See* Minute Entry 5/7/24.

On June 13, 2024, pretrial services filed its third Violation Report. ECF No. 24. According to the Report, on May 30, 2024, Stutts tested positive for amphetamines/methamphetamine. *Id.* at 3. As a result, pretrial services instructed him to report to Integrated Care of Greater Hickory for on June 11, 2024 for a substance abuse assessment. *Id*. at 4. Stutts again failed to report. *Id*.

On June 14, 2024, the Court held another status hearing in this matter. *See* Minute Entry

6/14/24. At the hearing, pretrial services requested program removal. The government requested that Stutts be given one more chance to get into compliance. The Court agreed that revocation at that stage was premature. The Court again ordered Stutts to comply with his release conditions but warned him that if he did not get into compliance, the Court would seriously consider revoking his release conditions and ordering him detained pending trial. Pretrial services filed another report on July 18, 2024. ECF No. 26. According to the July 18 report, Stutts attended a substance abuse assessment at Integrated Care of Greater Hickory on July 8, 2024. Stutts informed his substance abuse provider that "he has no desire to stop his substance use." ECF No. 26 at 3. Stutts also took a drug test on that day, which returned positive results for marijuana and methamphetamine.

The Court held additional status hearings on July 19, 2024 and July 29, 2024. At the July 29 status hearing, Stutts argued that Adderall, not his use of methamphetamine, was producing positive drug testing results.

Pretrial services filed its latest report on September 12, 2024. ECF No. 35. According to the report, Stutts submitted positive drug tests for methamphetamine on August 7, 2024 and August 13, 2024. . Stutts is enrolled in therapy at Cognitive Connections, and the August 7, 2024 test was provided by his treatment provider at that facility. As of the filing of that report, Stutts had refused to provide any additional drug testing samples to the treatment provider since August 7, 2024.

Finally, on October 4, 2024, pretrial services informed government counsel that Stutts had failed yet another drug test which he took at his treatment facility on October 3, 2024.

The government has discussed Stutt's failed drug tests with his assigned pretrial services officer on multiple occasions. The government's understanding is that while Adderall may prompt a positive drug test for amphetamines in some circumstances, Stutt's recent drug tests indicate that

5

he has tested positive for methamphetamines. pretrial services relayed to the government that the positive results on Stutt's drug tests therefore were not caused by his Adderall use.

### III. Argument in Support of Pretrial Detention

#### A. Relevant Legal Standards

Under 18 U.S.C. § 3148(a), "[a] person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release." Upon the government's motion to revoke a release order, such as the instant motion, "[a] judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release." 18 U.S.C. § 3148(b). Once before the Court, the judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer –

> (1)    finds that there is – (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or (B) clear and convincing evidence that the person has violated any other condition of release; and
>
> (2)    finds that – (A) based on the factors set forth in section 3142(g) . . . , there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or (B) the person is unlikely to abide by any condition or combination of conditions of release.

*Id*.

Significantly, "[i]f there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, *a rebuttable presumption arises* that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." *Id*. (emphasis added).

Given the recent and material change in circumstances, the government moves to revoke Stutts's release conditions and obtain a bench warrant for his arrest.

#### B. Discussion

6

The government recommends that the defendant's release should be revoked. The defendant's numerous violations, ongoing non-compliance, and lack of cooperation establish that he is not amenable to supervision and will not abide by his conditions of release.

**1. Stutts committed a crime and violated release conditions.**

Stutts's release conditions provide that Stutts "must not violate federal, state, or local law while on release." ECF No. 9 at 1. As discussed, Stutts tested positive for methamphetamine on numerous occasions. Here, there is sufficient evidence to support a probable cause finding that Stutts committed a state possessory offense while on release. Stutts tested positive for methamphetamines on at least six occasions. Further, when presented with the option of treatment, Stutts told his substance provider that "he has no desire to stop his substance use." Notably, at that time, Stutts did not tell his substance provider that he was taking Adderall. Thus, the rebuttable presumption that no condition or combination of conditions will assure Stutts will not pose a danger to the safety of any other person or the community applies.

Pretrial services has represented that, while under certain circumstances, Adderall can produce positive drug test results for *amphetamines*; however, Stutts's lab results confirm that he tested positive for methamphetamines.[1] The pretrial services officer assigned to this case has confirmed for the government, via communications with Stutts's courtesy officer[2], that his most

---

[1] For further explanation of how drug test results can narrow the source of the positive finding, see *Methamphetamine Urine Toxicology: An In-Depth Review*, available at https://www.medcentral.com/pain/chronic/methamphetamine-urine-toxicology-depth-review (explaining that, "A finding of amphetamine-only positive by MS can be caused by prescription drugs (Adderall and various amphetamine salts) or as a result of methamphetamine metabolism, where the methamphetamine (whatever the source) has been converted to amphetamine. When methamphetamine is detected or both amphetamine and methamphetamine are detected, then the lab can run a d,l-isomer test to try and narrow the source of the positive methamphetamine finding").

[2] As outlined in the pretrial supervision reports, Stutts is being courtesy supervised by pretrial services in the Western District of North Carolina/Charlotte.

recent failed drug test contained methamphetamines and that the positive result could not be caused by Adderall alone. Rather, these drug test results indicate that Stutts was, in fact, using a controlled substance, methamphetamine. Moreover, Stutts did not have an Adderall prescription at the time the positive drug tests began, a fact which Stutts seems to concede in his motion to show cause.[3]

Stutts has also violated his release conditions by clear and convincing evidence. Stutts's release conditions prohibit him from using or unlawfully possessing a narcotic drug or other controlled substances in 21 U.S.C. § 802 and require him to "submit to testing for a prohibited substance if required by the pretrial services office or supervising officer." ECF No. 9 at 2. Upon a positive test, the conditions dictate that Stutts "should participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services or supervising officer." *Id*. 2–3. As discussed, there is clear and convincing evidence that Stutts (1) used and unlawfully possessed a controlled substance—methamphetamine—and (2) has thus far refused to participate in substance abuse therapy.

**2. Stutts is unlikely to abide by any conditions or combinations of conditions of release.**

Stutts has refused treatment for his substance abuse and at times failed to cooperate with additional drug testing. Stutts told his substance abuse provider at Integrated Care of Greater Hickory in July that he has "no desire to stop his substance abuse," according to the July 17 Violation Report, and has refused to submit additional samples for drug testing to his treatment provider. ECF No. 26 at 3; ECF No. 35 at 3. Stutts's latest motion also indicates that he is now

---

[3] The defendant seems to concede that he did not have a prescription for Adderall when the positive drug tests began. In his motion he notes that "he will likely continue to return positive tests as to those substances because he as *now* been prescribed Adderall, which would return positive results for amphetamine/methamphetamines on drug screenings." (ECF-37 (emphasis added).). He also states that he "obtained a prescription for Adderall" *since* the status conference held on July 29, 2024. Stutt's provided documentation of his Adderall prescription dated in late September and early October, 2024, but has not provided any documentation indicating that he was prescribed Adderall at an earlier date.

actively trying to cover up his illicit drug use. Specifically, after the last status conference after being advised he was testing positive on drug tests, Stutts "has obtained a prescription for Adderall". ECF No. 37 at 1-2. The Adderall prescription should be seen as a sham—an attempt to mask the illicit use of the methamphetamines. *See id.* at 9 ("[w]hile Mr. Stutts tested positive for amphetamine/methamphetamines on various occasions, he will likely continue to return positive tests as to those substances because he has *now* been prescribed Adderall, which would return positive results for amphetamine/methamphetamines on drug screenings."). However, despite his efforts, Stutts should not test positive for methamphetamines as a result of Adderall and according to pretrial services he is not testing positive due to the Adderall. However, these flagrant acts demonstrate Stutts's disregard for the Court's pretrial release order and the Court's prior warnings regarding his compliance. This serious and ongoing non-compliance is sufficient to revoke his release on conditions. *See United States v. Thomas*, No. 23-cr-069 (CKK), 2024 WL 519910, at *1 (D.D.C. Feb. 9, 2024) (revoking release where January 6 defendant used marijuana, did not allow pretrial services to assess his housing, and did not consent to a mental health evaluation and related medical and mental health releases; and eventually releasing defendant when he presented new information to demonstrate compliance); *United States v. Bauer*, No. 21-cr-386 (TNM) (D.D.C. Sept. 17, 2021) (revoking release where January 6 defendant failed to allow a home assessment, failed to surrender her passport, and failed to report to, or cooperate with, pretrial services in the Western District of Pennsylvania), *aff'd*, 2022 WL 298923 (D.C. Cir. Jan. 24, 2022). Similar to *Thomas* and *Bauer*, Stutts's non-compliance here renders him unamenable to supervision and warrants revocation until he presents new information or changed circumstances to demonstrate his commitment to compliance with the Court's conditions.

### IV. Conclusion

For the foregoing reasons, the government respectfully requests that this Court issue a bench warrant for Stutts, pursuant to 18 U.S.C. 3148(b), for violating his pretrial release conditions, revoke his pretrial release order, and detain him pending the case proceedings in this matter.

                                        Respectfully submitted,

                                        MATTHEW M. GRAVES
                                        UNITED STATES ATTORNEY
                                        D.C. Bar No. 481052

By:   *s/ Rachel Freeh*
        RACHEL FREEH
        Assistant United States Attorney
        U.S. Attorney's Office
        DC Bar No. 1736082
        601 D Street, N.W.
        Washington, DC 20530
        Phone: (202) 252-7749
        Rachel.freeh@usdoj.gov

        KATHRYN E. BOLAS
        Assistant U.S. Attorney
        NY Bar No. 5704234
        United States Attorney's Office
        Capitol Siege Section
        601 D Street, NW
        Washington, D.C. 20530
        Phone: (202) 252-0872
        Kathryn.Bolas@usdoj.gov