UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>LEE STUTTS,<br><br>Defendant. | )<br>)<br>)<br>)<br>)  Criminal No. 1:24-cr-00019-TSC<br>)<br>)<br>)<br>)<br>) |

**MOTION TO WITHDRAW CRIMINAL JUSTICE ACT COUNSEL**

Defendant Lee Stutts, by and through the undersigned counsel, and pursuant to Rule 44.5(d) of the Local Criminal Rules for the U.S. District Court for the District of Columbia and Rule 1.16(a)(1) of the D.C. Bar Rules of Professional Conduct[1], respectfully moves this Court for an order withdrawing the undersigned Criminal Justice Act ("CJA") attorney, Stanley E. Woodward, Jr., as counsel of record for Mr. Stutts.

**I.   BACKGROUND**

Mr. Stutts, through the undersigned counsel, moved to appoint Mr. Woodward as counsel in the instant matter pursuant to the Criminal Justice Act of 1964, 18 U.S.C. § 3006A. *See generally* Mot. (July 25, 2024) (ECF No. 28). The Court entered an order granting that motion and appointed Mr. Woodward as counsel for Mr. Stutts on July 26, 2024. In its Second Superseding Indictment filed on November 13, 2024 (ECF No. 44), the government charged Mr. Stutts with several felony offenses arising from the events of January 6, 2021, at the United States Capitol. Mr. Stutts was subsequently arraigned and pleaded not guilty to the Second Superseding

---

[1] The District Court for the District of Columbia has held that that the District of Columbia Rules of Professional Conduct govern, "practice of law in this District." *Paul v. Judicial Watch, Inc.*, 571 F. Supp. 2d 17, 20 (D.D.C 2008) (citing Rules of the United States District Court for the District of Columbia, LCvR 83.15).

1

Indictment on December 9, 2024. Trial in this matter is currently scheduled for January 13, 2025 at 9:30 AM, with the Pretrial Conference set for January 6, 2025 at 10:00 AM.[2] Order at 1 (Aug. 14, 2024) (ECF No. 34). The parties have abided by the Court's pretrial scheduling order with no deviations therefrom. Upon the government's Motion to Revoke Mr. Stutts' Pretrial Release (Nov. 6, 2024) (ECF No. 43) and having found that Mr. Stutts violated the conditions of his pretrial release, the Court revoked Mr. Stutts' pretrial release and ordered his detention at the November 13, 2024 hearing on the same. Following this hearing, the Court On November 14, 2024, the Court issued an arrest warrant as to Mr. Stutts, and he promptly self-surrendered himself to custody. Since his self-surrender to detention on November 14, Mr. Stutts has remained in custody. On December 31, 2024, Mr. Stutts, through counsel filed a Motion to Modify the Conditions of his Release, which remains pending before the Court. *See* Mot. (Dec. 31, 2024) (ECF No. 57).

On the evening of January 4, 2024 at 7:46 PM, President-Elect Donald Trump announced his intent to appoint the undersigned counsel to serve as Assistant to the President and Senior Counselor in his administration upon his inauguration in the coming weeks.[3] Mr. Woodward promptly notified the government the next morning at 9:31 AM, of his recent appointment, in addition to notifying them of his intent to file the instant motion, and requesting their position on the same. Although the government has not indicated its opposition to the relief requested by the instant motion, government counsel specifically requested Mr. Stutts's position on whether he

---

[2] On the evening of January 5, 2025, Chambers contacted the parties to notify them of an imminent closure of the Court on January 6, 2025 due to the inclement weather and informed the parties that the January 6, 2021 Pretrial Conference would be rescheduled as a result of that closure. As of the time of this filing, the Pretrial Conference had not been officially rescheduled.

[3] *Statement of President Donald J. Trump*, Trump Vance 2025 Transition, Inc. (Jan. 4, 2025), https://www.trumpvancetransition.com/s/trump-announces-additional-wh-staff-.

would object to any exclusion of time under the Speedy Trial Act should the Court not grant his pending Motion for Release (Dec. 31, 2024) (ECF No. 57). After encountering significant difficulty in getting in contact with Mr. Stutts, the general counsel of the D.C. Jail facilitated a call with Mr. Woodward. On this call, Mr. Woodward explained that his withdrawal from the case could significantly delay a trial in this matter regardless of whether he is released pending trial and Mr. Stutts confirmed that he understood such implications and that he consented to Mr. Woodward's withdrawal from representation of him in this matter. Consistent with Rule 44.5(d) of the Local Criminal Rule for the District Court for the District of Columbia, the undersigned will serve an as-filed version of the instant motion on Mr. Stutts at this last known address – currently, the District of Columbia Department of Corrections.

## II.   DISCUSSION

"[T]he orderly transfer of the executive power is one of the most important public objectives in a democratic society. The transition period insures that the candidate will be able to perform effectively the important functions of his or her new office as expeditiously as possible." Memorandum from Randolph D. Moss, Assistant Attorney General, OLC, *Definition of "Candidate" Under 18 U.S.C. §207(j)*, 2000 WL 33716979, at *4 (Nov. 6, 2000) (cleaned up). "One of the top priorities of any presidential administration is to protect the country from foreign and domestic threats. While a challenge at all times, the country is especially vulnerable during the time of presidential transitions . . . ."[4]   Thus, the transition process is "an integral part of the

---

[4] Center for Presidential Transition, *Presidential Transitions are a Perilous Moment for National Security* (Aug. 16, 2023), https://presidentialtransition.org/reports-publications/presidential-transitions-are-a-perilous-moment-for-national-security.

presidential administration," in the "national interest," and part of President Trump's "public function," as he prepares to govern.[5]

Rule 1.16 of the Rules of Professional Conduct for the District of Columbia Bar states that, "a lawyer. . . shall withdraw from the representation of a client if the representation will result in violation of the Rules of Professional Conduct *or other law*." District of Columbia Rules of Professional Conduct 1.16(a)(3) Rule 1.16(a)(3) (emphasis added). Federal law provides for the "orderly transfer of Executive powers in connection with the expiration of the term of office of a President and the inauguration of a new President."[6] "The transition process is "an integral part of the presidential administration," in the "national interest," and part of President Trump's "public function[.]"[7] The President-elect has already commenced this complex, sensitive, and intensely time-consuming process, which is a "monumental undertaking."[8] In pursuit of a smooth transition of power, the Presidential Transition Act of 1963, 3 U.S.C. 102 note ("PTA" or the "Act") was promulgated to "promote the orderly transfer of the executive power in connection with the expiration of the term of office of a President and the inauguration of a new President[,]" because, "national interests requires that such transitions in the office of President be accomplished so as to assure continuity in the faithful execution of the laws and in the conduct of the affairs of the Federal Government, both domestic and foreign." 3 U.S.C. 102 note, § 2. Accordingly, the

---

[5] OLC, *Reimbursing Transition-Related Expenses Incurred Before The Administrator Of General Services Ascertained Who Were The Apparent Successful Candidates For The Office Of President And Vice President* (Jan. 17, 2001), https://www.justice.gov/file/146186-0/dl?inline.

[6] OMB, No. M-24-13, Memorandum for Heads of Executive Departments and Agencies (Apr. 26, 2024), https://www.whitehouse.gov/wp-content/uploads/2024/04/M-24-13-Implementing-the-Presidential-Transition-Act.pdf.

[7] *Supra* n. 4.

[8] GSA, Presidential Transition Directory: Ethics & Accountability, https://www.gsa.gov/governmentwide-initiatives/presidential-transition-2024/ethics-and-accountability.

Act calls for "appropriate actions be authorized and taken to avoid or minimize any disruption[,]" which requests that "*all officers of the Government* so conduct the affairs of the Government for which they exercise responsibility and authority as (1) to be mindful of problems occasioned by transitions in the office of President, (2) to take appropriate lawful steps to avoid or minimize disruptions that might be occasioned by the transfer of the executive power, and (3) otherwise to promote orderly transitions in the office of President." *Id.* (emphasis added).

Mr. Woodward's representation of Mr. Stutts stands to complicate the demands of his recent appointment to the Office of the President, thereby undermining Congress' intent of the PTA to ensure such smooth presidential transitions. Now one of the President-Elect's closest advisors, Mr. Woodward must take all "appropriate actions" to "avoid or minimize any disruptions" to the presidential transition, including in this time preceding President Trump's inauguration. 3 U.S.C. 102 note, § 2; *see also United States v. Cisneros*, 169 F.3d 763, 764 (1999) (citing U.S. CONST. amend. XX, § 1) ("For a smooth transition, the selection of potential nominees, the investigations of their backgrounds, and the adjudications of their security clearances *must begin well before the President takes the oath on January 20th*.") (emphasis added). Such appropriate actions, *inter alia*, require Mr. Woodward to prioritize the demands of the presidential transition in the national interest, which may interfere with his ability to serve as adequate counsel to Mr. Stutts. Put differently, if Mr. Woodward proceeded with the preparation for *and* representation of Mr. Stutts for a trial in this matter, while simultaneously balancing the colossal undertaking that is the presidential transition, he would inevitably invite precisely the types of disruptions to the presidential transition that the PTA seeks to prevent. Mr. Woodward is not the only party bound by the PTA in this matter – so too are the Court and the prosecutors in this matter required "to promote orderly transitions in the office of President" as "officers of the government."

3 U.S.C. § 102 note, § 2.  Accordingly,  the Court and the prosecutors in this matter are urged to accommodate Mr. Woodward's pursuit of the same, as they the Act requires them too, as "officers of the government" to take measures to "to be mindful of problems occasioned by transitions in the office of President" and "to take appropriate lawful steps to avoid or minimize disruptions that might be occasioned by the transfer of the executive power." *Id.*  Thus, the Court and prosecutors should honor Mr. Woodward's request to withdraw as counsel for Mr. Stutts at this juncture.

## CONCLUSION

For the foregoing reasons, the Court should grant Mr. Woodward's Motion to Withdraw as CJA Counsel for Mr. Stutts.

Dated: January 6, 2024

Respectfully submitted,

 *s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (DC Bar No. 997320)
Brand Woodward Law, LP
400 Fifth Street NW, Suite 350
Washington, DC 20001
202.996.7447 (telephone)
202.996.0113 (facsimile)
stanley@brandwoodwardlaw.com

*Counsel for Defendant Lee Stutts*

## CERTIFICATE OF SERVICE

On January 6, 2024, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which automatically sends electronic notification of such filing to all registered parties.

 *s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr.